UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID PARKER et al.,

    Plaintiffs,

v.                                            Case No.: 8:14-cv-00723-T-27TGW

CITIMORTGAGE, INC. et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendant Citimortgage, Inc.'s Motion to Dismiss (Dkt. 15) and Fay Servicing, LLC's Motion to Dismiss Amended Complaint or, in the Alternative, to Stay the Action (Dkt. 16). Plaintiffs responded in opposition (Dkts. 25, 26). Upon consideration, the motions (Dkts. 15, 16) are DENIED.

I. INTRODUCTION

Plaintiffs David and Dawn Parker purchased a home in Sarasota, Florida in 2004 (Dkt. 9 ¶ 4). They granted a mortgage on the property to Defendant Citimortgage, Inc. ("Citi") (*id.* ¶ 13), but eventually fell behind on the mortgage payments. Citi initiated foreclosure proceedings in August 2008 (*id.* ¶¶ 14, 15). Soon after, Plaintiffs filed for bankruptcy and listed the debt owed to Citi in the bankruptcy petition (*id.* ¶ 17). In a statement of intention filed with the Bankruptcy Court, Plaintiffs declared their intent to surrender the property to Citi (*id.* ¶ 18). The Bankruptcy Court entered an order in March 2009 discharging the debt, and Plaintiffs surrendered the property to Citi (*id.* ¶¶ 19, 20). The discharge Order prohibited creditors from taking any action to collect the discharged debt,

1

including contacting the debtors by phone or mail, filing or continuing a lawsuit, or attaching wages or other property (*id.* ¶ 19).

The state court dismissed the 2008 foreclosure case in January 2011 for lack of prosecution (*id.* ¶ 21). Citi then filed a second foreclosure action against Plaintiffs in September 2011 (*id.* ¶ 23). The 2011 foreclosure case sought repayment of the principal and interest on the mortgage and note along with all associated costs, charges, and expenses (*id.*). The complaint also sought a deficiency judgment and stated that the complaint was an attempt to collect a debt (*id.*). Perceiving the 2011 foreclosure complaint to be a violation of the discharge Order, Plaintiffs reopened the bankruptcy case and filed a motion for contempt against Citi (*id.* ¶ 25).

The parties settled the contempt motion in October 2012 (*id.* ¶ 28). The settlement agreement required Plaintiffs to "[e]xecute the Withdrawal of Affirmative Defenses with Prejudice and Consent to Final Judgment of Foreclosure," "[c]onsent to the entry of the final judgment of foreclosure" in the 2011 foreclosure case, and withdraw the contempt motion within ten days (Dkt. 24-1 ¶¶ 3(A)(iii), 3(A)(iv), 3(A)(v)). For its part, Citi agreed "that any judgment obtained in the Foreclosure Action is for in rem relief only" (*id.* ¶ 3(B)(ii)). Plaintiffs allege that they consented to the in rem final judgment and filed a withdrawal of affirmative defenses, as required by Paragraph 3 of the settlement agreement (Dkt. 9 ¶ 29). But they contend that Citi never filed the in rem final judgment with the state court for entry as required by the settlement agreement (*id.*).

The settlement also provided that "Citi's actions shall constitute a full and complete settlement of all claims released pursuant to this agreement" (*id.* ¶ 4). The claims released pursuant to the settlement agreement were defined as "all claims of any kind . . . that [Plaintiffs] may have with respect to the [contempt motion] up until the date of this Agreement" (*id.* ¶ 5). Along with

releasing such claims, Plaintiffs also agreed "not to file any claims, complaints, affidavits, arbitrations and/or proceedings with any court . . . with respect to the matters released in this agreement" (*id.*).

In 2013, Citi sold Plaintiffs' loan to U.S. Bank, as Trustee for PROF-2012-S1 Holding Trust I ("U.S. Bank") (*id.* ¶ 37). Later that year, U.S. Bank sold the loan to PROF-2012-S1 REO I, LLC ("REO") (*id.* ¶ 38). Acting as an agent for both U.S. Bank and REO during the relevant period, Defendant Fay Servicing, LLC allegedly began a collection campaign on the loan despite the fact that it had been discharged (*id.* ¶¶ 38, 39). In aid of collecting the debt, Fay Servicing allegedly sent monthly statements to collect on the debt, sent a notice of lender's fire insurance policy, and made repeated phone calls to Plaintiffs attempting to collect the debt (*id.* ¶¶ 41-43). Disturbed by this conduct, Plaintiffs filed a second motion for contempt with the Bankruptcy Court against Citi, U.S. Bank, and Fay Servicing (*id.* ¶ 47). They also filed this lawsuit.

Plaintiffs bring two claims against Citi and three against Fay Servicing. Count I alleges that Citi violated the Florida Consumer Collection Practices Act (FCCPA), § 559.72, *Florida Statutes*, by resuming collection efforts despite the discharge of Plaintiffs' debt in bankruptcy (Dkt. 9 ¶¶ 31, 55, 56). Count II alleges a breach of contract by Citi for failing to abide by the terms of the settlement agreement (*id.* ¶¶ 55, 56). Count III alleges that Fay Servicing violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (Dkt. 9 ¶¶ 65, 67), by initiating collection efforts on the Plaintiffs' debt despite its discharge in bankruptcy (*id.* ¶¶ 39, 40). Count IV alleges that Fay Servicing violated the FCCPA with allegations parallel to those supporting Count III (*id.* ¶¶ 73, 74). And Count V alleges that Fay Servicing violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by placing weekly phone calls to Plaintiffs' cell phone

using an automatic dialing system (Dkt. 9 ¶¶ 82-84).

## II. STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The complaint must contain enough facts to make a claim for relief plausible on its face." *Id.* at 1324-25. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)).

Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, the scope of the district court's review is generally limited to the four corners of the complaint. *Speaker v. U.S. Dep't of Health & Human Servs., Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). The district court may, however, consider an extrinsic document on a motion to dismiss if "it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

### III. DISCUSSION

#### A. <u>Motion to Dismiss by Citi.</u>

Citi presents three reasons why the Amended Complaint should be dismissed. First, it argues that the claims are barred by the parties' settlement agreement. Second, it argues that the settlement agreement requires this dispute to be decided by the United States Bankruptcy Court. And third, Citi argues that Counts I and II must be dismissed because Plaintiffs fail to state a plausible claim.

##### *1. The Settlement Agreement Does Not Bar the Claims.*

Citi contends that the terms of the settlement agreement release Citi "from all claims of any kind" (Dkt. 15 at 4). In addition, Citi claims that Plaintiffs agreed "not to file any complaints with respect to any matters released by the agreement" (*id.*). Because these arguments present a limited interpretation of the settlement agreement and fail to consider other, material terms, they are unpersuasive.

A settlement agreement is subject to the traditional rules of contract interpretation. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004). When the language of a

contract is unambiguous, construction of the contract is a question of law for the court and the four corners of the document should be used to discern the intentions of the parties. *Id.*; *Weingart v. Allen & O'Hara, Inc.*, 654 F.2d 1096, 1103 (5th Cir. Sep. 4, 1981).[1]

Under the plain language of the settlement agreement, Plaintiffs agreed to release all claims "with respect to" the contempt motion that accrued before the effective date of the settlement agreement (Dkt. 24-1 ¶ 5), and not to bring any proceedings with respect to the claims released. This language does not bar the instant claims against Citi for two reasons. First, none of the claims asserted in this lawsuit are brought "with respect to" the first contempt motion. Second, only claims in existence prior to the settlement agreement were released (*id.*), and the claims against Citi in this lawsuit at least arguably accrued after October 1, 2012, the effective date of the settlement agreement. The claims brought by Plaintiffs, supported by allegations dating from after October 1, 2012, which are not brought "with respect to" the first contempt motion are therefore not released or barred under the settlement agreement. *Cf. Klein v. John Hancock Mut. Life Ins. Co.*, 683 F.2d 358, 361 (11th Cir. 1982) (claim that had not matured at the time of the release and was based on facts occurring after the release was not barred by broad general release).

### 2. The Settlement Agreement Does Not Require This Dispute to Be Resolved by the Bankruptcy Court.

Citi next argues that "the terms of the settlement agreement also require that any disputes concerning the settlement agreement should be decided by the United States Bankruptcy Court for the Middle District of Florida" (Dkt. 15 at 1). The settlement agreement states that disputes among

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Plaintiffs and Citi should be decided by the Bankruptcy Court "provided it has subject matter jurisdiction" (Dkt. 24-1 at 3). It does not.

Jurisdiction in the Bankruptcy Court is created in three types of proceedings: (1) those that "arise under title 11"; (2) those that "arise in cases under title 11"; and (3) those "related to cases under title 11." *In re Toledo*, 170 F.3d 1340, 1344 (11th Cir. 1999) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Proceedings "arise under title 11" only if a claim involves a "substantive right created by the bankruptcy code," and do not include breach of contract, FCCPA, or FDCPA claims. *Id.* at 1345; *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010) (breach of contract claims does not "arise under" the bankruptcy code); *Wynne v. Aurora Loan Servs., LLC (In re Wynne)*, 422 B.R. 763, 770 (Bankr. M.D. Fla. 2010) ("[C]laims under the FDCPA and FCCPA . . . are not causes of action created by the Bankruptcy Code and can exist outside the bankruptcy case.").[2] Plaintiffs claims against Citi do not "arise under title 11."

Proceedings that "arise in cases under title 11" involve administrative matters that arise exclusively in bankruptcy. *In re Toledo*, 170 F.3d at 1345. This category of proceedings also does not include breach of contract, FCCPA, or FDCPA claims. *See In re Ray*, 624 F.3d at 1131 (breach of contract claim "does not depend on an administrative matter unique to the bankruptcy code" and therefore does not arise in a case under the bankruptcy code); *In re Wynne*, 422 B.R. at 770 (neither FDCPA claims nor FCCPA claims "arise in" a particular bankruptcy case and can exist outside bankruptcy proceedings).

---

[2]*Accord Bauer v. JP Morgan Chase Bank (In re Bauer)*, 2012 WL 4442241, at *3 (Bankr. N.D. Ala. Sep. 24, 2012) ("Plaintitffs' FDCPA and FCCPA claims do not arise under title 11 because they 'are not causes of action created by the Bankruptcy Code . . . .'") (quoting *In re Wynne*, 422 B.R. at 770). *See also Garcia v. North Star Capital Acquisition, LLC (In re Garcia)*, 2013 WL 414177, at *5 n.4 (Bankr. W.D. Tex. Feb. 1, 2013) (agreeing with "the majority of courts that have concluded bankruptcy courts do not have 'related to' jurisdiction over a Chapter 7 debtor's post petition claims for unfair debt collection practices," and citing cases).

The only remaining basis for Bankruptcy Court jurisdiction is when a case is "related to cases under title 11." A civil proceeding is "related to" title 11 when "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990). Where the conduct giving rise to a claim occurs after the petition for bankruptcy, the cause of action no longer belongs to the estate and recovery therefore would not have an impact on the estate. *In re Toledo*, 170 F.3d at 1345; *In re Boone*, 52 F.3d 958, 960 (11th Cir. 1995). Plaintiffs' claims arose post-petition and therefore are not subject to "related to" jurisdiction.

The Bankruptcy Court does not have subject-matter jurisdiction over the claims filed by Plaintiffs against Citi. The settlement agreement provides that if the United States Bankruptcy Court does not have subject-matter jurisdiction, "the dispute shall be decided before the United States District Court, Middle District of Florida, provided it has subject-matter jurisdiction." This Court has jurisdiction over Plaintiffs claims. *See* 28 U.S.C. § 1331. Citi's argument that the Bankruptcy Court should decide this dispute is therefore unconvincing.

### 3. *Plaintiffs Plausibly State Causes of Action Against Citi.*

#### a. Count I: Violation of the FCCPA.

Count I alleges that Citi communicated certain information to Plaintiffs in violation of sections 579.72(7) and 579.72(9) the FCCPA (Dkt. 9 ¶¶ 54, 56). In pertinent part, § 559.72 provides:

> In collecting consumer debts, no person[3] shall:
> ....
> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can

---

[3]Under the FCCPA, a "person" includes any "individual, partnership, corporation, association, or other organization." § 559.01, Fla. Stat.

> reasonably be expected to abuse or harass the debtor or any member of her or his family.
>
> . . . .
>
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

§§ 559.72(7), 559.72(9), Fla. Stat.

  i. *§ 559.72(7).*

To plead a violation of § 559.72(7), a plaintiff must allege facts showing that the defendant (1) "willfully communicate[s] with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family"; *or* (2) "willfully engage[s] in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." § 559.72(7), Fla. Stat.

Citi first argues that letters sent to Plaintiffs are not considered "communications" under § 559.72(7) (Dkt. 15 at 7). The statute defines "communication" as "conveying information regarding a debt directly or indirectly to any person through any medium." § 559.55, Fla. Stat. Citi suggests that letters without language demanding payment, or without language requiring the recipient to pay a debt, are considered informational and therefore do not amount to debt collection communications (Dkt. 15 at 7). Even if this is true, Plaintiffs allege that Citi's communications to Plaintiffs explicitly state: "This is an attempt to collect a debt and any information obtained will be used for this purpose." (Dkt. 9 ¶ 35). They also allege that other communications sent by Citi reflected amounts owed to Citi by Plaintiffs (*id.* ¶ 34). This language suggests that Citi was in fact attempting to collect a debt, and Plaintiffs therefore plead sufficient facts to allege that Citi communicated in an attempt to collect a debt. *See Reese v. Ellis, Painter, Ratteree & Adams*, 678 F.3d 1211, 1217 (11th Cir. 2012) (letters with langauge such as "ATTEMPTING TO COLLECT A DEBT" and "collection is

sought" indicate an attempt to collect a debt when considering a claim under the FDCPA).[4]

Citi further argues that even if they are communicating for purposes of the FCCPA, Count I should be dismissed because Plaintiffs do not allege sufficient frequency in contact. Citi suggests that the settlement agreement bars consideration of any communications before October 2012, leaving only two property insurance notices and an escrow account disclosure statement at issue. Citi further contends that these communications taken together are not frequent enough to have harassed the debtor.

Citi fails to consider, however, the second clause of § 559.72(7), which prohibits a person from "willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass the debtor." Citi makes no argument based on this portion of § 559.72(7), and Plaintiffs correctly argue that they have pleaded sufficient facts to allege that Citi's actions "can reasonably be expected to abuse or harass" Plaintiffs. Taking the allegations in the light most favorable to Plaintiffs, Citi was aware of the discharged debt and settled a contempt motion based on similar conduct, rendering any further or continued communication on the topic such that it could reasonably be expected to harass Plaintiffs. Plaintiffs have therefore pleaded sufficient facts to plausibly allege a violation of § 559.72(7).

  ii.  *§ 559.72(9).*

To allege a violation of § 559.72(9), a plaintiff must allege that the defendant engaged in conduct to (1) "claim, attempt, or threaten to enforce a debt, when such person knows that the debt is not legitimate"; *or* (2) "assert the existence of some other legal right when such person knows that

---

[4]In applying Chapter 559, *Florida Statutes*, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." § 559.77(5); *Read v. MFP, Inc.*, 85 So. 3d 1151, 1153 (Fla. 2d DCA 2012).

the right does not exist." *See* § 559.72(9). The statute requires allegations of "actual knowledge." *Read*, 85 So. 3d at 1155.

Citi argues that the claim brought under § 559.72(9) should be dismissed because Citi had no "actual knowledge" that the debt was not legitimate (Dkt. 15 at 8). Citi argues that Plaintiffs admitted that they were in default of their mortgage before the bankruptcy proceedings and the underlying debt was therefore legitimate (*id.*). After the debt was discharged, Citi argues it was validly entitled to pursue a foreclosure action even if it could not collect on the discharged debt.

Again, even if all of the facts argued by Citi are accurate, the allegations of the Amended Complaint nonetheless plead a violation of § 559.72(9). First, Citi sent Plaintiffs letters stating "This is an attempt to collect a debt and any information obtained will be used for that purpose," and notifying Plaintiffs of its property insurance obligations by stating that unpaid premiums "will be charged to your escrow account." (Dkt. 9 ¶¶ 34, 35). The language of these letters is inconsistent with Citi's argument that it sought only to foreclose on the security interest because the property was still in Plaintiffs' name. Moreover, some of these actions were taken *after* Citi sold the loan to U.S. Bank on June 25, 2013. Actions related to the collection of a debt that the party does not own or service may constitute a violation of § 559.72(9). *See, e.g., Matmanivong v. Unifund CCR Partners*, No. 08-cv-6415, 2009 WL 1181529, at *5-6 (N.D. Ill. Apr. 28, 2009).

    b.    <u>Count II - Breach of Contract.</u>

Count II asserts a claim for breach of the settlement agreement against Citi. Citi argues Plaintiffs fail to state a claim for breach of contract because the settlement agreement required Plaintiffs to consent to entry of a final judgment, but did not require Citi to actually have the judgment entered (Dkt. 15 at 10). The plain language of the settlement agreement, however, does

11

not reveal whether Citi was obligated to have the final judgment entered after Plaintiffs withdrew their affirmative defenses (*see* Dkt. 24-1 ¶ 3(B)). The parties are essentially arguing about their intent in forming the contract. When the language of the contract is ambiguous, as it is here, intent is a question of fact not appropriate for consideration on a motion to dismiss. *See Smith v. Shelton*, 970 So. 2d 450, 451 (Fla. 4 th DCA 2007) ("Where the wording of an agreement is ambiguous, its interpretation involves questions of fact, precluding summary disposition."). Rather, Plaintiffs allege that the parties intended for Citi to submit the final judgment for entry, an allegation which is adequately supported by the contractual language read in the light most favorable to Plaintiffs. Plaintiffs therefore state a cause of action for breach of contract.

Citi also argues that it is immune from the breach of contract claim under Florida's litigation privilege (Dkt. 15 at 10). Florida's litigation privilege applies only to allegations of tortious conduct, not breaches of contract, however. *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) (litigation privilege extended to "all *tortious* causes of action") (emphasis added).[5]

### B. Motion to Dismiss by Fay Servicing.

Plaintiffs assert three claims against Fay Servicing. Count III alleges a violation of the FDCPA. Count IV alleges a violation of the FCCPA. And Count V alleges a violation of the TCPA. Fay Servicing argues that the Amended Complaint should be dismissed for failure to comply with the general rules of pleading.[6] It also argues that the Amended Complaint should be dismissed under

---

[5] *Accord Navellier v. Sletten*, 131 Cal. Rptr. 2d 201, 209 (Cal. Dist. Ct. App. 2003) ("[T]he [litigation] privilege is generally described as one that precludes liability in tort, not liability for breach of contract.").

[6] Fay Servicing argues that Plaintiffs lumped together allegations against the Defendants and therefore failed to put Fay Servicing on fair notice of the claims against them. This argument is without merit.

the "doctrine of splitting claims," and that Counts III and IV should be dismissed for failure to state a claim. In the alternative, Fay Servicing argues that the action should be stayed.

### 1. Plaintiffs Adequately Allege Violations of the FDCPA and FCCPA in Counts III and IV.

The FDCPA and FCCPA impose civil liability on "'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010). A "debt collector" is any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a). Plaintiffs allege that Fay Servicing sent by mail monthly statements to Plaintiffs regarding collection of the debt (Dkt. 9 ¶¶ 11, 41). The statements allegedly included language relevant to debt collection such as listing an amount as the "Current Payment Due," as well as providing instructions for Plaintiffs to "DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT" (*id.* ¶ 41). Plaintiffs also allege that Fay Servicing sent a "Notice of Lender's Fire Insurance Policy Placement," which stated that if Plaintiffs failed to pay, an amount would be added to the mortgage (*id.* ¶ 42). Plaintiffs more than adequately allege that Fay Servicing is a "debt collector" under the FDCPA and FCCPA.

Fay Servicing appears to argue that it is not a "debt collector" because it is a "holder" or an "owner" of the debt pursued in the 2011 foreclosure action. This argument is contradicted by the Amended Complaint, however, which alleges that Fay Servicing does not own the debt, but is merely servicing the debt owned by U.S. Bank and REO (Dkt. 9 ¶¶ 37, 38). Fay Servicing cites *Neff v. Capital Acquisitions & Management Co.*, 352 F.3d 1118 (7th Cir. 2003), in support of this argument,

13

but that case is inapposite. In *Neff*, the Seventh Circuit held that the owner of a debt who later sold the debt to another entity was not a "debt collector." *Id.* at 1121. As alleged in the Amended Complaint, Fay Servicing never sold nor acquired Plaintiffs' debt. Rather, it is alleged to have acted merely as an agent debt collector for the entities who did sell and acquire the debt (Dkt. 9 ¶ 38).[7]

Fay Servicing further argues that Counts III and IV should be dismissed because Fay Servicing is seeking to foreclose on the mortgage pursuant to its rights under the terms of the note and mortgage, and it is therefore not a debt collector. This argument is unpersuasive and ignores the nature of the communications sent to Plaintiffs. Even if Fay Servicing was merely notifying Plaintiffs of its intent to pursue a rightful security interest, the language of its monthly letters is clearly "related to debt collection." *Reese*, 678 F.3d at 1216.

Fay Servicing's arguments are nearly identical to those made by the law firm in *Reese*. There, the law firm argued that its letters to the plaintiffs indicating its intent to foreclose on the security interest accompanying the promissory note did not constitute "conduct... related to debt collection." *Id.* at 1216. The Eleventh Circuit disagreed, holding that the law firm's letters were an attempt to collect the "debt" embodied in the promissory note, especially considering the express language in the letter that the law firm was "ATTEMPTING TO COLLECT A DEBT." *Id.* at 1217. The law firm nonetheless argued that the letters were intended only to give the plaintiffs notice of its intent to initiate foreclosure proceedings on the security interest. *Id.* at 1217. The court held, again, that this intent does not prevent the letters from also relating to the collection of a debt within the terms of the FDCPA. *Id.* The court was unwilling to "create a loophole in the FDCPA" whereby debt

---

[7]*Cooper v. Litton Loan Servicing (In re Cooper)*, 253 B.R. 286, 291 (Bankr. N.D. Fla. 2000), is inapposite for the same reason.

14

collectors could avoid their obligations in collecting the underlying debt merely by giving notice of its intent to foreclose on the security interest. *Id.* at 1218. In the words of the court, "So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't." *Id.*

For the reasons explained by the Eleventh Circuit in *Reese*, Fay Servicing's letters are subject to the FDCPA despite the underlying security interest. Contrary to Fay Servicing's argument, "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." *Id.* Plaintiffs adequately allege that Fay Servicing is a "debt collector" for purposes of the FDCPA, and that its communications to Plaintiffs were related to the collection of a debt. These allegations are supported by the language in Fay Servicing's letters to Plaintiffs. The FDCPA claims, therefore, are not due to be dismissed.

### 2. *Plaintiffs Did Not Split Claims.*

Fay Servicing argues that Counts III and IV should be dismissed, or the action stayed, based on the "splitting of causes of action doctrine" (Dkt. 16 at 5). The gist of this argument is that because Plaintiffs filed a motion for contempt in the bankruptcy proceeding before the Complaint was filed, this lawsuit cannot continue. Fay Servicing argues that Plaintiffs are litigating in "multiple courts involving the same parties and alleging claims arising out of the same transactions and occurrences" and this lawsuit should therefore be barred under doctrine of claim preclusion.

The general rule that a court should dismiss a duplicative suit does not apply if the suit is brought in a court that does not have jurisdiction over all of the plaintiff's claims. *Aquatherm Indus. Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1392 (11th Cir. 1996). This Court does not have jurisdiction to remedy Defendants' alleged violation of the discharge order or to adjudicate the

motion for contempt filed by Plaintiffs in the Bankruptcy Court. *See In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996) (violations of discharge injunctions should be addressed through the contempt powers of the Bankruptcy Court pursuant to 11 U.S.C. § 105). Nor, as has already been determined, does the Bankruptcy Court have jurisdiction over the claims asserted in this lawsuit.

Accordingly, Defendant Citimortgage, Inc.'s Motion to Dismiss (Dkt. 15) and Fay Servicing, LLC's Motion to Dismiss Amended Complaint or, in the Alternative, to Stay the Action (Dkt. 16) are **DENIED**. Defendants shall answer the Amended Complaint within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** this 31st day of July, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record